243 F.2d 919
 57-1 USTC P 9645
 Warren C. GRAHAM and Agnes B. Graham, His Wife, and
Catherine Young Cobb, Appellants.
v.
UNITED STATES of America, State of California, City of
Oakland and County of Alameda, Appellees.
 No. 14965.
 United States Court of Appeals Ninth Circuit.
 April 29, 1957.
 
 Schofield, Hanson & Jenkins, Thomas M. Jenkins, San Francisco, Cal., for appellants.
 Charles K. Rice, Asst. Atty. Gen., Joseph F. Goetten, Atty., Dept. of Justice, Washington, D.C., Lloyd H. Burke, U.S. Atty., San Francisco, Cal., Edmund G. Brown, Atty. Gen., James E. Sabine, Ernest P. Goodman, Deputy Attys. Gen., State of California, John W. Collier, City Atty., City of Oakland, Oakland, Cal., J. F. Coakley, Dist. Atty., County of Alameda, Oakland, Cal., for appellees.
 Before STEPHENS, BONE and POPE, Circuit Judges.
 BONE, Circuit Judge.
 
 
 1
 The United States (hereafter 'Government') commenced this action in the District Court for the Northern District of California, Southern Division, to foreclose alleged Federal tax liens. 26 U.S.C.A. (I.R.C.1939) § 3678. A judgment for the Government establishing liens and decree of foreclosure and order of sale was entered September 14, 1955. Appellants appeal from this judgment.
 
 
 2
 The taxes sought to be collected are Federal income and excess profits taxes for the year 1942 assessed against each of the Grahams as transferees of the Kincaid Company in the Second District of New York, which assessments were transferred to the Collector of Internal Revenue, San Francisco; withholding and Federal insurance contribution taxes, penalties and interest for the four quarters of the calendar year 1945 and the first three quarters of the calendar year 1946 in the aggregate amount of $542,706.95 against Warren C. Graham and Agnes B. Graham, doing business as Graham Ship Repair Company; and Federal income taxes for the years 1945 and 1946 against Warren C. Graham and Agnes B. Graham in the amount of $1,139,375.86.[1] The value of the property sought to be sold by lien foreclosure in this proceeding is approximately $30,000. The State of California, the County of Alameda and the City of Oakland asserted claims against the property and the district court determined the priorities of all the claims.
 
 
 3
 On this appeal appellants present three claims of error: (1) error by the trial court in excluding evidence challenging the validity of the Government lien for the 1942 taxes sought to be foreclosed in this action and the assessment upon which it is based; (2) error by the trial court in failing to find certain tax collection waivers were signed under duress;[2] (3) error by the trial court in finding that the transfer of the land sought to be sold by this foreclosure proceeding by the Grahams to Catherine Young Cobb was fraudulent. We discuss these claims below.
 
 
 4
 As noted above, in their first claim of error, appellants urge that the court erroneously excluded evidence which challenges the validity of the Government lien sought to be foreclosed and the assessment upon which it is based. Appellants Graham had denied in their answer any liability for the (New York) federal transferee taxes, and sought to introduce evidence challenging the validity of the assessments for 1942, upon which liens were based. Appellants further sought to prove during the trial that they received no notice of the 1942 assessment, and that the 90 day letter, as provided for in 26 U.S.C.A. (I.R.C.1939) § 272(a), was not communicated to them. This evidence was excluded by the trial judge for the reason that in a prior case, United States v. Graham, D.C.S.D.Cal. 1951, 96 F.Supp. 318, affirmed sub. nom. State of California v. United States, 9 Cir., 1952, 195 F.2d 530, certiorari denied 1952, 344 U.S. 831, 73 S.Ct. 36, 97 L.Ed. 647, liens arising from the 1942 assessments had been foreclosed, and that the assessments and liens arising thereunder must be considered valid. We believe this ruling was correct.
 
 
 5
 The record of the prior case on appeal in this Court shows that the Grahams were parties defendant thereto, and that the trial court found assessments for Federal income and excess profits taxes were made against the Grahams, as transferees of the Kincaid Company for the year 1942; that tax liens arose on property of the Grahams. The trial court ordered foreclosure of these liens by sale of the property. The issue of validity of the assessments for 1942 Federal income and excess profits taxes was, or could have been and should have been, litigated and decided in this prior case, and may not be litigated here. Cory v. Commissioner of Internal Revenue, 3 Cir., 1947, 159 F.2d 391, 392; Gunter v. Atlantic Coast Line Railroad Co., 1906, 200 U.S. 273, 290, 26 S.Ct. 252, 50 L.Ed. 477.
 
 
 6
 In the trial court, appellants contended that even should the Grahams be foreclosed by the prior case to question the assessments for the 1942 taxes and the lien arising thereunder, Catherine Young Cobb could properly raise the issue as she was not a party to the prior proceeding. Though Catherine Young Cobb may not be bound by the judgment in the prior case, we believe that she cannot question the assessments and liens for the 1942 taxes, and we so hold.
 
 
 7
 We believe that only the taxpayer may question the assessment for taxes, and assert noncompliance by the Commissioner in sending the taxpayer a notice of deficiency by registered mail. The purpose of 26 U.S.C.A. (I.R.C.1939) § 272(a) (1) is to give the taxpayer notice that the Commissioner intends to assess a deficiency tax, and to give the taxpayer an opportunity to have the Commissioner's ruling reviewed by the Tax Court before it finally becomes effective. Commissioner of Internal Revenue v. Stewart, 6 Cir., 1951, 186 F.2d 239. This right to review the tax deficiency assessment seems to us to be peculiarly personal to the taxpayer, and equally so, it would seem, is the right to show non-compliance by the Commissioner in mailing to taxpayer the 90 day letter, which is to give taxpayer the opportunity, if he wishes, to review the assessment. A tax assessment may not be collaterally attacked. Commercial Credit Corporation v. Schwartz, D.C.E.D.Ark.1954, 126 F.Supp. 728, 730, and cases there cited. Equally, we do not believe the Commissioner's compliance or non-compliance with the statute in mailing the 90 day letter should be subject to collateral attack, especially by a third-party, non-delinquent taxpayer. Cf. Petition of Sills, D.C.E.D.N.Y.1953, 115 F.Supp. 239.
 
 
 8
 The second claim of error is that the trial court erred in not making findings on whether certain 'waivers' signed by the Grahams concerning the 1942 taxes were executed under duress. Appellants urge in their brief that 'the testimony of the agents of the United States, of course, was in a small way inconsistent with the testimony of appellants.' We will not review the evidence; the question we must decide is whether it was error for the trial court not to make a finding on the tendered testimonial issue of 'coercion' in procuring the signing of the Tax Collection Waivers which extended time to collect the taxes for 1942 by distraint or by a judicial proceeding to and including December 31, 1952. If the waivers were procured by coercion and invalid, the action to foreclose liens to collect the tax assessments for 1942 would not be timely.[3]
 
 
 9
 This Court cannot make findings, Deering-Milliken & Co. v. Modern-Aire of Hollywood, Inc., 9 Cir., 1955, 231 F.2d 623, 627. When there is a failure to make necessary findings this Court will not dismiss the appeal, but ordinarily vacates the judgment and remands the case to the district court for appropriate findings of fact. Irish v. United States, 9 Cir., 1955, 225 F.2d 3. A failure to make findings does not always require remand if a complete understanding of the issues may be had without the aid of separate findings. 5 Moore's Federal Practice, § 52.06(2), pp. 2662-2664 (2nd Ed., 1951); Yanish v. Barber, 9 Cir., 1956, 232 F.2d 939, 947. Government's position is that a complete understanding of the issue may be had without a specific finding on coercion since the court did find valid liens for the taxes involved and ordered foreclosure, which means that the court believed this suit to foreclose was timely filed.
 
 
 10
 The record on appeal does not indicate that appellants tendered a proposed finding on 'coercion.' They had testified at trial that the circumstances under which the waivers were executed amounted to 'coercion.' (See footnote 3.) The record fails to indicate that appellants moved to amend or supplement the findings, or for a new trial, (see Rules 52(b), 59(a), (b) and (d) of Fed.Rules Civ.Proc., 28 U.S.C.A.). Failure to make a finding on the question of 'coercion' did not then appeal to appellants as a matter for timely correction, and we need not speculate on whether the absence of such a finding merely indicates that both court and appellants 'overlooked' such a formality, nor need we speculate on the meaning to be drawn from the absence of such a finding. It is apparent that appellants were remiss in not timely moving to supplement or amend the findings to include a specific finding on a claimed coercion which they now assert tainted the validity of the waivers.
 
 
 11
 The third claim of error concerns the finding that the conveyances by the Grahams to one Frank Hansen (apparently as trustee for Catherine Young Cobb), and the conveyance by Hansen to Cobb were shams and frauds.[4] The trial court specifically found that the conveyance to Hansen and the subsequent conveyance to Catherine Young Cobb were shams and frauds on the creditors of Warren C. Graham and Agnes B. Graham, and ordered the conveyances set aside and the property sold by the United States Marshal for the Northern District of California. We have examined the record carefully and find substantial evidence to support this finding.[5]
 
 
 12
 Judgment is affirmed.
 
 
 
 [1]
 The district court made these findings: The assessment list carrying assessments of the 1942 income and excess profits taxes against Warren C. Graham was received by the Collector of Internal Revenue for the Second District of New York on March 26, 1945, and against Agnes B. Graham on May 14, 1945; notice and demand for payment was served on each; on May 2, 1946, the Collector transferred these assessed tax liabilities to the Collector in San Francisco, and on May 9, 1946, the San Francisco Collector placed both liabilities on his current tax list; the Collector caused a notice of lien to be filed for both liabilities on August 10, 1946, by the County Recorder of Alameda County. The Collector of Internal Revenue received a telegraphic jeopardy assessment for the 1945-1946 withholding and Federal insurance contributions taxes, penalties and interest on December 6, 1946, served a notice and demand for payment on December 9, 1946, and caused a notice of lien to be filed by the County Recorder of Alameda County on the same day. The Collector of Internal Revenue received the assessment list for the 1945-1946 income taxes on August 1, 1949; on August 1, 1949, and September 2, 1949, the Collector served notices and demands for payment on the Grahams; on December 12, 1949, the Collector caused a notice of tax lien to be recorded by the County Recorder of Alameda County. The court concluded that the liens of the United States arose '* * * when on the following dates, the Collector received the assessment lists covering these assessments: (a) March 26, 1945, (b) May 14, 1945, (c) December 6, 1946, and (d) August 1, 1949.'
 
 
 [2]
 The first two claims of error concern the assessments and liens for the 1942 Federal income and excess profits taxes. No error is charged as to the assessments and liens for taxes for years 1945-46
 At oral argument in this Court, appellants assured us that they are not contesting 'the later taxes.' They conceded that 'if we are liable for the 1942 taxes, we have no case-- that the validity of the 1942 taxes is the only question to be decided.' They further assured us that their 'basic argument' is that the administrative assessment (the mailing of the 90 day letter, etc.) was not proven; that if these administrative formalities were proven to have been followed, 'then the 1942 taxes were proper, and the 'sham deed' finding would bind us.'
 
 
 [3]
 26 U.S.C.A. (I.R.C.1939) § 276(c) requires collection by court proceedings within six years after the assessment of the tax, or prior to the expiration of any period agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six year period. Since the assessments for 1942 were made on March 26, 1945 (against Warren C. Graham), and May 14, 1945 (against Agnes B. Graham), the six years expired before the filing of this action in the District Court on August 17, 1951. The waivers are dated November 21, 1950, and would extend the time to commence this action to December 31, 1952, if the waivers were valid, that is, not executed under duress. At the time the Grahams executed the tax collection 'waivers,' Warren C. Graham was in the Federal penitentiary at McNeil Island; the Grahams assert they signed the waivers because Internal Revenue officers led them to believe the 'waivers' would expedite parole for Graham
 
 
 [4]
 After finding the conveyances to be shams and frauds, it was stated, 'In any event the transfer to Catherine Young Cobb was no more than a gift.' Appellants object to this finding being 'in the alternative.' We don't believe the court made a finding 'in the alternative.' As we read the finding the court distinctly found the conveyances to be shams and frauds. We believe that what the court meant in the above sentence was that even had it found the conveyance to Catherine Young Cobb to be a gift, appellants' case would not benefit since a donee is not given the favored treatment given a mortgagee, pledgee, purchaser, or judgment creditor, 26 U.S.C.A. (I.R.C.1939, as amended) § 3672. The district court found that the Grahams acquired record title to the property on October 16, 1946, that the Grahams' deed to Hansen was recorded December 7, 1946, and that Hansen conveyed to Catherine Young Cobb by deed recorded May 28, 1948
 
 
 [5]
 A pertinent bit of evidence is found in Hansen's deposition, an exhibit on appeal. Concerning the conveyance by the Grahams to Hansen to be held in trust for Catherine Young Cobb, Hansen stated, 'He (Mr. Haynie) asked me to sign them (deeds). At the time I was not on particularly friendly terms with Mr. Graham, but he asked me to help him out and said that the Internal Revenue was breathing hard down his neck. That quote I remember as quotes-- 'breathing hard down his neck' and (quote) 'Warren asked if you would sign these." The Grahams executed the deed to Hansen on August 6, 1946, but apparently did not deliver the deed until several months later. The deed to Hansen was not recorded until December 7, 1946. Hansen deposed that two deeds were executed, the one by the Grahams deeded the land to Hansen, and the other by Hansen '* * * transferred the property from me back to W. C. Graham, blank date.' The signing by Hansen occurred '* * * the last week in November or the first week in December in 1946.' The Grahams continued to live in the residence until 1950 (testimony of Warren Graham), some considerable time after the conveyances to Hansen and to Catherine Young Cobb. The district court found: 'The substance of the deposition and attached exhibit, with respect to the conveyance of the property to Frank Hansen, is that the purpose of such transfer was to avoid Federal tax liens. frank Hansen did not otherwise plead or appear and his default is entered.' The court found 'The conveyance * * * from Frank Hansen to Catherine Young Cobb was a sham and made for the same purpose as was the conveyance from the Grahams to Hansen, namely, to conceal the Grahams' interest therein.'