James R. JOHNSON and Jack Trovato,
Plaintiffs,

v.

CITY OF FAIRFAX, COMMONWEALTH
OF VIRGINIA, and United States,
Defendants.

Civ. A. No. 381–71–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

July 7, 1972.

Richard E. Dixon, Fairfax, Va., Louis Koutoulakos, Arlington, Va., for plaintiffs.

Gerald R. Walsh, Fairfax, Va., Robert F. Horan, Commonwealth Atty. for County of Fairfax, Fairfax, Va., Brian P. Gettings, U. S. Atty., Alexandria, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

ALBERT V. BRYAN, Jr., District Judge.

On March 20, 1970, police officers of the City of Fairfax, together with police officers of Fairfax County, Virginia, conducted a narcotics raid of the premises 3507 Cobb Drive, Fairfax, Virginia. They seized, in addition to various narcotics, $10,907.00 found in a suitcase in a room in the house occupied by Christopher W. Leighton; $1,979.00 found in a room occupied by Ronald J. Shaiman; $425.00 found in the wallet of Allan B. Siwek, an occupant of the premises; $140.80 found in the wallet and bedroom of Jane Ann Davis, an occupant of the premises and also lessee of the premises; and $950.00 found on a clipboard in the living room. The four above-named persons were arrested and charged with various offenses involving drugs. In the case against Shaiman in the Circuit Court of Fairfax County, Virginia, that court suppressed all of the evidence seized during the raid on the ground that the seizure was illegal. The court directed return of the evidence other than contraband and directed the money to "be held by the court pending a determination of the rightful owner or owners." The money, totalling $14,-401.80, is still held by the City of Fairfax.

A *nolle prosequi* of the indictment against Shaiman was permitted on February 1, 1971; Leighton pled guilty on December 15, 1970, in the Fairfax City Municipal Court to violation of Va.Code Ann. § 54–446.10(3) (since repealed), a misdemeanor charge of possession of controlled drug; and Jane Ann Davis pled guilty to possession of more than 25 grams of cannabis in violation of Va. Code Ann. § 54–488 (since repealed), a felony. The evidence does not indicate the outcome of the charge against Siwek.

On January 28, 1971, James R. Johnson and Jack Trovato, owners of the rented premises, filed suit in the Circuit Court of Fairfax County, Virginia, against the City of Fairfax and the Commonwealth of Virginia, claiming the entire sum of "$14,300.00," and specifically alleging that during the occupancy of the house the named lessees and the other tenants had damaged the premises to the extent of $3,500.00.

Christopher Leighton intervened in the proceeding, claiming $6,500.00 of the seized money. The City of Fairfax answered and stated that it should have the funds if no other person or entity could prove entitlement thereto.

The Commonwealth of Virginia by Cross-Bill undertook to institute a forfeiture proceeding pursuant to Va.Code Ann. 18.1–346 (1971 Cum.Supp.) and Va.Code Ann. §§ 19.1–17 and 358 (1960 Repl.Vol.).

Upon suggestion that there might be other parties who might have a claim to the funds, publication was issued against "Ron Shaman (sic) . . ., Jane A. Davis . . ., Allen Siwek (sic) . . ., and others who have or claim any interest" in the fund.

On May 11, 1971, Notice of Levy was served on the City of Fairfax through Carl W. Buchholz, Chief of Detectives, stating that there was owing and unpaid to the United States from Ronald J. Shaiman, Allan B. Siwek, Christopher W. Leighton, and Jane Ann Davis, the sum of $7,500.00 each, plus interest from the date of the assessment, May 6, 1971. The assessment was for federal mari-

juana transfer taxes claimed to be owed pursuant to 26 U.S.C. § 4741.

Thereafter, on September 14, 1971, the United States was added as a party to the state proceedings, and on September 24, 1971, the United States removed the case to this court.

Plaintiffs and Leighton contest the validity of the lien of the United States, on the grounds (1) that 26 U.S.C. § 4741 was repealed effective May 1, 1971, and that therefore since the date of assessment was May 6, 1971, the lien is invalid, and (2) that there has been no proof of the amount of sales of marijuana to justify levy of the tax in the amount claimed. These same parties contest the validity of the claim of the Commonwealth of Virginia on the grounds (1) that the proceedings undertaken by way of cross-claim do not amount to a forfeiture, and (2) that Virginia cannot forfeit property or money which has been by it illegally seized. The United States in answer to the claims as to its lien states first, that the landlord has no standing to contest its lien and that the only person who has such standing is the taxpayer and, secondly, that the notice of levy and lien cannot be contested even by the taxpayer in this proceeding, but that such contest must be made by way of an action for a refund or by proceeding in the Tax Court of the United States. The Commonwealth of Virginia states that it has a prior claim because of its forfeiture and even if it doesn't that the proof shows that the funds were proceeds or profits from illegal trafficking in drugs and therefore the taxpayer does not come into this equitable proceeding with clean hands and should not be allowed to prevail.

From the testimony the Court finds that the $10,907.00 found in the suitcase in Leighton's room was money which belonged jointly to Leighton, Siwek and one Peter Shaver. These three persons during the period beginning approximately Thanksgiving of 1969 until the raid on March 20, 1970, were engaged in a joint enterprise to import from England hashish, paying therefor approximately $250.00 per pound. They would then sell it for between $900.00 and $1,000.00 a pound and reinvest the proceeds in the purchase of additional drugs. The $10,907.00 was a portion of these proceeds, as was the $950.00 found attached to the clipboard in the living room. During this entire period, Shaiman was unemployed but did receive some money from home. Shaiman, while not a member of the partnership, would buy from the partnership and sell the drugs on his own. The Court finds that the money found in his bedroom, totalling $1,979.00, was also proceeds of illegal trafficking in drugs. The same is true for the $425.00 found in Siwek's bedroom. The evidence does not establish that the $140.80 found in Jane Davis' bedroom is the proceeds of illegal trafficking in drugs, since the uncontradicted testimony is that she was not a member of the partnership nor did she participate in the enterprise.

Plaintiffs concede that they are not entitled to any part of the $10,907.00, but state that they have a landlord's lien for three months rent at $335.00 per month, which they admit is inferior to the lien of the United States if the latter's lien is valid. The testimony indicates that, while the suit originally alleged damages of $3,500.00, the actual damage to the premises amounts to $2,489.00, less a security deposit of $335.00. The theory on which the plaintiffs claim the funds over and above $10,907.00 is not clear, but it was stated during argument that it was the theory of abandonment. In the opinion of the Court, abandonment, of which intent to abandon is a necessary element, has not been proved. Clearly, when the occupants of the house were arrested on March 20, 1970, they did not intend to abandon the money. It was taken from them and they did not relinquish it voluntarily. Moreover, the Court holds that the landlord has no lien for damages done to the property but only for rent.

Nor can the landlord contest the validity of the United States' lien. Graham v. United States, 243 F.2d 919 (9th Cir. 1957).

■■ The effective date of the repeal of 26 U.S.C. § 4741 was May 1, 1971; however, as previously pointed out, the trafficking in marijuana which gave rise to the tax asserted in the Notice of Levy took place during the period Thanksgiving, 1969, to March 20, 1970. During this period the tax became due immediately upon any sale or purchase of marijuana. It therefore became due during the period in which 26 U.S.C. § 4741 was in force. Subsequent repeal of that statute would not eliminate the accrued tax liability. 1 U.S.C. § 109. In addition, as the United States has pointed out, the taxpayer has not in this proceeding overcome the presumption of correctness of the assessments. See United States v. Strebler, 313 F.2d 402 (8th Cir. 1963).

The lien of the United States is, therefore, insofar as this proceeding is concerned, valid and attaches to that portion of the funds seized which belongs to each taxpayer, which is as follows:

| | |
|---|---|
| Ronald J. Shaiman | $1,979.00 |
| Jane Ann Davis | 140.80 |
| Allan B. Siwek ($425.00, plus ⅓ of $10,907.00 or $3,635.67, plus ⅓ of $950.00 or $316.66) | 4,377.33 |
| Christopher B. Leighton (⅓ of $10,907.00 or $3,635.67, plus ⅓ of $950.00 or $316.66) | 3,952.33 |

Counsel for the United States, the Commonwealth of Virginia, and City of Fairfax advised the Court, prior to trial, that there was no dispute as to priority of their claims as among them; and that they had settled that aspect of the case. Accordingly, insofar as the above amounts, totalling $10,449.49, are concerned that total shall be divided among the three entities in such proportions as they have agreed on.

Insofar as the remainder of the fund (⅓ of the $10,907.00 and ⅓ of $950.00), which belongs to Peter Shaver, there is no tax lien. Consequently, it must be determined if any liens of other claimants attach to this $3,952.34.

■ The Cross-Bill of the Commonwealth, filed on February 26, 1971, prayed that the "monies described herein be forfeited to her." Liberally construed this might be treated as the information called for under Va.Code Ann. § 19.1–359 (1960 Repl.Vol.); however, in the eight months following the filing of the Cross-Bill until the case was removed to this Court, no further proceedings were pursued to effect a condemnation. No warrant was issued by the Clerk of the State court; no seizure was made by the Sheriff; no notice of the filing of the information was issued or posted by the Clerk; and, more importantly, Peter Shaver, the owner of the remaining funds according to the Commonwealth's witness, Davis, has never been notified of any forfeiture proceeding. The Court is unwilling to hold that the publication against "others who have or claim any interest in certain funds seized at 3507 Cobb Drive, Fairfax, Virginia, on or about the 20th day of March, 1970" is notice to the *known* person Peter Shaver. Moreover, that publication did not give notice of condemnation, it gave notice that the object of the suit was "the determination of ownership of said funds." That determination has now been made, and it develops that Peter Shaver is one of the owners.

■ The City of Fairfax claims the funds "to the extent that no other person or entity can prove that it is entitled" thereto. Insofar as the remaining ⅓ is concerned, proof has been forthcoming that it belongs to Peter Shaver.

■ The plaintiffs may have a landlord's lien for rent on the remainder of the fund. However, if the plaintiffs seek to enforce that lien in a proceeding such as this, as opposed to enforcement by distraint under Va.Code Ann. § 55–230 (1969 Repl.Vol.), notice must be given the owner of the fund. As indicated, no such notice has been given.

Therefore, insofar as the $3,952.34 remainder of the fund is concerned, the Court will leave it with the City of Fairfax, without prejudice to the right of the plaintiffs to institute attachment proceedings against it or the right of the Commonwealth to proceed against it by information. It is so ordered.