**DOMINION TRUST COMPANY OF TENNESSEE**

v.

**The UNITED STATES of America, et al.**

No. 3–89–0899.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 13, 1991.

Alfred Edward Abbey, Andree Kahn Blumstein, Trabue, Sturdivant & DeWitt, Nashville, Tenn., Robert Clive Marks, Marks, Shell, Maness & Marks, Clarksville, Tenn., for plaintiff.

Michael L. Roden, Office of U.S. Atty., Nashville, Tenn., Carl Q. Carter, Ann Reid, Dept. of Justice, Washington, D.C., John H. Bailey, III, Timothy K. Garrett, Bass, Berry & Sims, John Mitchell Grissim, Grissim & Hodges, Nashville, Tenn., Frances Hardison Childers, Clarksville, Tenn., for defendants.

## MEMORANDUM

HIGGINS, District Judge.

Before the Court is the motion re payment of income taxes of the plaintiff, Dominion (filed April 1, 1991; Docket Entry No. 45), and the accompanying memorandum in support thereof (filed April 1, 1991; Docket Entry No. 46), in which the plaintiff seeks a determination from the Court in regard to its duty to file federal and state income tax returns for the year 1990 and to pay federal capital gains taxes.

## I. BACKGROUND.[1]

This is an interpleader action filed by Dominion for the determination of the appropriate disposition of assets held in trust by Dominion on behalf of the defendant, Mr. William T. Hardison, Jr. Dominion is the successor trustee of two testamentary trusts. Defendant Hardison has a one-half interest in the principal of each trust.[2] These trust assets have become vested in defendant Hardison and are subject to the competing claims of his creditors. Defendant First American Bank has a bankruptcy judgment against these assets for loans which Hardison fraudulently obtained from First American. Defendant United States of America, represented by the Internal Revenue Service, seeks to enforce its tax levy to satisfy its tax liens against defendant Hardison's property due to false tax returns filed by defendant Hardison in 1967, 1968, and 1969. By order entered April 18, 1991 (Docket Entry No. 53), the Court accepted and adopted the Report and Recommendation of the Magistrate Judge (entered January 11, 1991; Docket Entry No. 41), and found that First American's bankruptcy judgment has priority over the United States' tax liens.

By order entered on December 28, 1989 (Docket Entry No. 9), the Court granted the motion of Dominion, as trustee, to be allowed to sell certain stocks and bonds, which constituted part of the trust assets. These securities were liquidated in January of 1990 at a capital gain of $1,202,610.00. *See* affidavit of Gail Smith Bradford, Vice President of Dominion (filed April 1, 1991; Docket Entry No. 47), p. 2. The issue before the Court is whether Dominion, as trustee, or defendant Hardison, as beneficiary, is responsible for paying the capital gains taxes incident to this sale. For the reasons set forth below, the Court finds that Dominion should pay the capital gains taxes, and orders the payment of such taxes from the trust assets.

## II. DISCUSSION.

### A. Jurisdiction.

In its response to Dominion's motion (filed April 4, 1991; Docket Entry No. 48),

---

**1.** As the factual background of this action has been well stated by the Magistrate Judge in his Report and Recommendation concerning motions for summary judgment (entered January 11, 1991; Docket Entry No. 41), the Court shall be brief.

**2.** The trust assets have been divided into two shares. One share is held by the plaintiff for the benefit of defendant Hardison, and the other share for the benefit of defendant Frances Hardison Childers and her issue. *See* affidavit of Gail Smith Bradford, Vice President of Dominion (filed April 1, 1991; Docket Entry No. 47), p. 1.

First American argues that this Court lacks subject matter jurisdiction by operation of the Declaratory Judgment Act as codified in 28 U.S.C. § 2201.[3] Under this Act, any federal court may declare the rights of any interested party "[i]n a case of actual controversy within its jurisdiction, *except with respect to Federal taxes....*" 28 U.S.C. § 2201(a) (emphasis added). First American argues that this Court lacks jurisdiction because (1) no actual controversy exists, and (2) Dominion's motion addresses issues "with respect to Federal taxes."

■ First American argues that, because the IRS has taken no action to collect the tax in question, the question is not ripe for adjudication. *See* response of First American, p. 3. First American's position is without merit. As Dominion correctly argues, 26 U.S.C. §§ 1(e) and 641 impose an income tax on the taxable income of every trust. Further, the taxes in question became due and owing to the federal government as of April 15, 1991, by operation of statutory law. *See* 26 U.S.C. § 6072(a). That date, as well as the date of extension obtained from the IRS by Dominion,[4] has passed. Thus, the Court finds that Dominion's motion addresses an actual controversy within the meaning of the Declaratory Judgment Act. *See Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699 (1936).

■ With respect to First American's second argument, neither the Sixth Circuit Court of Appeals, nor the lower district courts of this circuit, have addressed the applicability of the Declaratory Judgment Act in any case analogous to the facts here. However, the Court notes that the Act

neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief. The jurisdictional boundaries in tax cases are drawn by the Anti–Injunction Act, 26 U.S.C. § 7421, which provides ... that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is a person against whom such tax was assessed."

*McCarthy v. Marshall,* 723 F.2d 1034, 1037 (1st Cir.1983). As the District Court for the Northern District of Ohio observed, the legislative history of the Declaratory Judgment Act indicates that "the congressional intent was to create a prohibition as to actions concerning federal taxes coterminous with that provided in the Anti–Injunction Act so as to preclude circumvention of the provisions of the Anti–Injunction Act through the maintenance of an action seeking declaratory relief only." *Lugo v. Smith,* 453 F.Supp. 677, 690 (N.D.Ohio 1978) (citing *Eastern Kentucky Welfare Rights Organization v. Simon,* 506 F.2d 1278, 1285 (D.C.Cir.1974), *vacated on other grounds,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). *See also Ecclesiastical Order of the ISM of AM, Inc. v. Internal Revenue Service,* 725 F.2d 398, 404–05 (6th Cir.1984) ("[t]he two Acts, though not similarly worded are, as the majority notes, to be interpreted coterminously.") (Jones, J., concurring in part and dissenting in part; footnote omitted; citing *Lugo v. Smith, supra* ). "Thus, despite its broad language, the Declaratory Judgment Act bars only declaratory relief sought 'for the purpose of restraining the assessment or

---

**3.** In its response to Dominion's motion (filed April 19, 1991; Docket Entry No. 54), the United States argues that First American lacks standing to question whether Dominion is liable to pay the taxes in question. *See* United States' response to Dominion's motion re payment of income taxes, pp. 5–6. First American agrees that it has no standing to challenge the assessment of taxes of another taxpayer, and asserts that it is not even challenging the payment of the taxes. Instead, it argues that it does have standing to protect its interest in the value of the trust funds, in which it has a prior claim and from which the tax would be paid. *See*

First American's reply to the responses of the United States and Dominion (filed May 6, 1991; Docket Entry No. 55), p. 2. The Court agrees with First American, and finds that it has standing to oppose Dominion's motion. Furthermore, assuming that First American lacks standing, the Court may address issues of jurisdiction *sua sponte.*

**4.** *See* Dominion's motion to ascertain status (filed October 23, 1991; Docket Entry No. 63), p. 2.

collection of any tax.' " *Church of Scientology of Celebrity Centre, Los Angeles v. Egger,* 539 F.Supp. 491, 494 (D.D.C.1982).

In *Henshel v. Guilden,* 300 F.Supp. 470 (S.D.N.Y.1969), a case remarkably similar to the issue presented by the instant motion, the plaintiff, a co-executrix of an estate, sought declaratory judgment that the defendant trust, and not the estate, was liable for an income tax deficiency. While the IRS was not a party to the federal action, the IRS had claimed the income tax deficiency against the estate in the New York Surrogate's Court. *Henshel,* 300 F.Supp. at 471–72.

As one ground for dismissal of the plaintiff's action, the defendant argued that, because the plaintiff seeks a declaratory judgment with respect to Federal taxes, the plaintiff's action was barred by the Declaratory Judgment Act. The District Court rejected that argument.

> The court is not being asked to declare whether any tax is due the United States, or, if so, how much, but only which of two entities is liable for the otherwise unchallenged assessments. The mere circumstance that a Federal tax assessment is a material element here does not bring this action between private parties within the statute's exception. Indeed this would be so even if IRS were the defendant here.

*Id.* at 472.

The Court finds *Henshel* applicable here. Dominion's motion does not require the Court to declare whether a capital gains tax is due; that matter is not disputed. Nor does Dominion ask the Court to address the amount of taxes due, or seek to prevent the IRS from assessing or collecting taxes. The sole issue raised by Dominion's motion is whether the tax should be paid out of the trust assets, or by defendant Hardison. As such, Dominion's motion does not run afoul of the Declaratory Judgment Act. Accordingly, the Court finds that it is not barred by the Declaratory Judgment Act from addressing this motion.

First American cites three cases, which, it argues, stand for a contrary conclusion.

See *In the Matter of the Tax Indebtedness of Energy Financial Corporation,* 58 A.F.T.R.2d 86–5965 (W.D.N.C.1986); *Wahpeton Professional Services, P.C. v. Kniskern,* 275 F.Supp. 806 (D.N.D.1967); and *Jolles Foundation, Inc. v. Moysey,* 250 F.2d 166 (2d Cir.1957). In each of these three cases, the courts dismissed the actions for lack of jurisdiction, because the plaintiff sought "a declaration of the rights and other legal relations of the parties in respect of Federal taxes." *Wahpeton,* 275 F.Supp. at 808.

A close reading of these cases, however, reveals that each plaintiff sought, in one way or another, to prevent the IRS from assessing or collecting taxes. In this regard, these cases are not applicable to the instant motion. In *Energy Financial Corporation,* the court found that the plaintiff's "main concern seem[ed] to be that the IRS may seize property that does not belong to the taxpayer in this case." *Energy Financial Corporation,* 58 A.F.T.R.2d at 86–5966. In *Wahpeton,* the plaintiffs sought a determination from the court that their professional organization was a corporation within the meaning of 26 U.S.C. § 401(a), the legal result of which would have rendered the organization exempt from income taxes under 26 U.S.C. § 501(a). See *Wahpeton,* 275 F.Supp. at 807, 808. Finally, in *Jolles Foundation,* the Second Circuit Court of Appeals affirmed the dismissal of the lower court because the Foundation "pray[ed] for a decree that the Director [of the IRS] ha[d] wrongfully and unlawfully deprived the Foundation of its property 'by his exclusion of plaintiff's name from the list of organizations entitled ... to the privilege of tax exemption.' " *Jolles Foundation, Inc. v. Moysey,* 250 F.2d at 168 (quoting the plaintiff's complaint). The Second Circuit declared that it could not "presume to speak for the Commissioner or take over his duty to pass upon the tax status of organizations applying for exemption." *Id.* at 169.

**B. Payment of the Tax.**

Turning to the substance of Dominion's motion, Dominion argues that sections 1(e) and 641 of the Internal Revenue Code im-

pose an income tax on the taxable income of every trust. Taxable income means gross income minus allowable deductions. 26 U.S.C. § 63(a). The gross income of a trust is determined in the same way as the gross income of an individual taxpayer. 26 C.F.R. § 1.641(a)–2. Capital gains income is included in gross income. 26 U.S.C. §§ 61(a)(3), 1001(c), 1222; 26 C.F.R. § 1.61–6(a). Thus, capital gains income is taxable income.

Dominion points out that the fiduciary is required to make and file trust income tax returns and to pay the tax on the taxable income of the trusts. 26 U.S.C. §§ 6012(b)(4), 641(b); 26 C.F.R. § 1.641(b)–2. Therefore, Dominion, as trustee, is required to make and file a tax return for the trusts and to pay the federal income tax, including the capital gains tax, for as long as the trusts remain taxpaying entities.

For federal income tax purposes, a trust remains a taxpaying entity until the trust terminates.

Generally, the determination of whether a trust has terminated depends upon whether the property held in trust has been distributed to the persons entitled to succeed to the property upon termination of the trust rather than upon the technicality of whether or not the trustee has rendered his final accounting. A trust does not automatically terminate upon the happening of the event by which the duration of the trust is measured. A reasonable time is permitted after such event for the trustee to perform the duties necessary to complete the administration of the trust. Thus, if under the terms of the governing instrument, the trust is to terminate upon the death of the life beneficiary and the corpus is to be distributed to the remainderman, the trust continues after the death of the life beneficiary for a period reasonably necessary to a proper winding up

of the affairs of the trust. However, the winding up of a trust cannot be unduly postponed and if the distribution of the trust corpus is unreasonably delayed, the trust is considered terminated for Federal income tax purposes after the expiration of a reasonable period for the trustee to complete the administration of the trust. Further, a trust will be considered as terminated when all the assets have been distributed except for a reasonable amount which is set aside in good faith for the payment of unascertained or contingent liabilities and expenses (not including a claim by a beneficiary in the capacity of beneficiary).

26 C.F.R. § 1.641(b)–3(b).

Dominion also argues that the 1990 Tennessee tax and tax return are due and owing as a result of the sale of the securities. *See* Tenn.Code Ann. § 67–2–107.

### 1. *Termination of the Trusts.*

■ Dominion argues that, because the trust assets have not yet been distributed, the trusts have not terminated, and therefore, remain taxpaying entities.

Citing the latter portion of the above regulation, First American argues that the issue of whether the distribution of the assets has been "unduly postponed" and "unreasonably delayed" is a fact-specific question. First American points out that the life beneficiary died in December of 1987, approximately four years ago. After the death of the life beneficiary, title to the assets vested in defendant Hardison. Yet, after a period of roughly four years, these assets have yet to be distributed. First American argues that "[t]he question of whether this period was 'reasonably necessary' for these merely ministerial duties, or constitutes 'undue postponement' is a genuine issue of material fact."[5] First American's response to Dominion's motion, p. 7.

In support of its argument that distribution of the trusts has been unduly post-

---

5. The Court notes that, in making this argument, First American invokes the standard for a summary judgment motion. However, Dominion's motion is not made pursuant to Rule 56, Fed.R.Civ.P., nor does First American argue that Dominion's motion is one for summary judgment. Indeed, First American asserts that Do-

minion's motion "seeks a declaratory judgment with respect to federal taxes," presumably under Rule 57. *See* First American's reply to the responses of the United States and Dominion, p. 3. Accordingly, the Court does not construe Dominion's motion as one for summary judgment and does not apply this standard.

poned, First American points to the memorandum opinion of this Court in the case of *In re William Thomas Hardison, IV*, 110 B.R. 326 (M.D.Tenn.1989). In that memorandum, this Court stated

> [w]ith reference to the interest of Hardison in his family trusts, it seems clear that the trusts have terminated and the only remaining thing to be done is final distribution of the assets. Even though these are spendthrift trusts, the remaining duties are nothing but ministerial in nature and have nothing to do with the continuation of the trusts, and as the bankruptcy judge stated, a person cannot create a spendthrift trust for himself.

Memorandum of the Court, p. 328 (Morton, S.J.).[6]

As a second basis for finding that the trusts have terminated, First American argues that Dominion's filing of this interpleader action "may constitute a 'distribution' for tax law purposes, or at least may constitute a 'set aside ... for the payment of unascertained or contingent liabilities ...,' in which event the trust is no longer a taxpaying entity." First American's response to Dominion's motion, p. 7. First American contends that "by operation of law the interpleader action transferred these assets to the custody of the Court for the benefit of the owner, [defendant] Hardison...." *Id.*

After considering the arguments of all the parties, the Court finds that the trusts have not terminated, and therefore remain taxpaying entities.

Taking First American's latter argument first, the Court finds that the filing of this interpleader action by Dominion does not constitute a "distribution" under the above Treasury regulation. That regulation defines "distribution" as the conveyance of the corpus "to the persons entitled to succeed to the property upon termination of the trust." In other words, the trust assets must reach the beneficiary, or in this case his creditors, in order for the conveyance to be a distribution. Because the Court is not "entitled to succeed to the property," the transfer of the assets to the custody of the Court is insufficient to constitute a distribution. Indeed, this action was filed to resolve the issue of entitlement to the assets and in what amounts. Until the Court resolves that issue, no distribution of the assets can take place.

Secondly, while distribution of the trust assets has not occurred, despite the fact that the life beneficiary died approximately four years ago, the Court cannot find, and First American has not offered, any evidence to suggest that the distribution has been "unduly postponed" or "unreasonably delayed."

It is undisputed that this matter has been in continuous litigation since the death of the life beneficiary in 1987. *See* Report and Recommendation of the Magistrate Judge, pp. 5–6. This matter was originally brought in Bankruptcy Court by defendant Hardison. First American intervened. During the pendency of the litigation in Bankruptcy Court, Dominion requested that the United States, through the Internal Revenue Service, be made a party to the action. First American opposed that request. The Bankruptcy Court ruled that joinder of the IRS was unnecessary because the interests of the IRS would not be " 'impaired or impeded by an Order of this Court....' " *Id.* at 5 (quoting the memorandum of the Bankruptcy Court). The Bankruptcy Court then awarded a judgment of execution and garnishment to First American, a judgment that was subsequently appealed to and affirmed by this Court and by the Sixth Circuit Court of Appeals.

It is clear that Dominion has brought this interpleader action against the IRS, as well as First American, to resolve issues of distribution which could have been decided during the bankruptcy proceedings had the IRS been made a party to that suit. Under these circumstances, the Court can hardly find unreasonable delay on the part of Dominion, especially when First American opposed joinder in the bankruptcy proceedings. Nor can the Court hold Dominion responsible for the length of time required

---

**6.** This memorandum is attached to First American's response to Dominion's motion.

by the appellate process. In short, the Court finds no evidence of the sort of dilatory conduct contemplated by 26 C.F.R. § 1.641(b)–3(b) on the part of Dominion.

Finally, while this Court previously stated that "it seems clear that the trusts have terminated," the Court notes that this declaration was rendered within the context of a review of the decision of the Bankruptcy Court. The payment of taxes—federal or state—was not at issue, and the Court was not ruling on the proper application of 26 C.F.R. § 1.641(b)–3(b). Accordingly, the Court is not bound by this conclusion.

### 2. Tax Liability.

Finally, First American argues that, even if the trusts have not terminated, Dominion is not responsible for the payment of the taxes by operation of the Internal Revenue Code. See First American's reply to the responses of the United States and Dominion, pp. 7–9. According to First American, a trust is entitled to a deduction in computing its taxable income equal to the sum of "(1) any amount of income for such taxable year required to be distributed currently ...; and (2) any other amounts ... required to be distributed for such taxable year." 26 U.S.C. § 661(a). Under 26 U.S.C. § 662(a) and 26 C.F.R. § 1.662(a)–3(a), that deductible amount is passed on as gross income to the beneficiary, regardless of whether or not it is actually distributed. First American argues that, because the capital gain was received in the same year that this Court ruled that the corpus was required to be distributed, i.e., 1990, Dominion is entitled to deduct the capital gain for the trusts under 26 U.S.C. § 661(a). First American argues that, by operation of 26 U.S.C. § 662(a), the capital gain becomes income of defendant Hardison.

■ Here, unlike First American's prior arguments, see footnote 3, supra, First American raises the issue of how much tax is owed to the federal government by another taxpayer, i.e., the trusts. This, First American has no standing to do.

While there seem to be no cases directly on point, a review of case law reveals a long-standing principle that, where the IRS has assessed taxes against a taxpayer, only

the taxpayer has standing to challenge that assessment. See, e.g., United States v. Formige, 659 F.2d 206, 208 (D.C.Cir.1981); Moyer v. Mathas, 458 F.2d 431, 434 n. 4 (5th Cir.1972); Graham v. United States, 243 F.2d 919, 922 (9th Cir.1957); and ERC/Scheible, Inc. v. United States (In the Matter of ERC/Scheible, Inc.), 56 B.R. 157, 159 (Bankr.M.D.Fla.1985). In other words, "[a] third party ... does not have standing to attack the validity of taxes assessed against a stranger." Rutledge v. Riddell, 186 F.Supp. 552, 558 (S.D.Cal. 1960). While there has been no formal assessment of taxes by the IRS in this case, the Court finds that this principle is applicable here as well. Like the right to review a tax assessment, the filing of a tax return (along with any claimed deductions) is a matter "peculiarly personal to the taxpayer." Graham, 243 F.2d at 922. If the Internal Revenue Code allows a taxpayer to take a certain type of deduction, it is up to the taxpayer to claim it. A third party cannot assert the deduction on behalf of the taxpayer.

■ Furthermore, even if First American had standing to make this argument, the Court may not examine the propriety of the trustee's tax return, especially before the return is filed. 26 U.S.C. § 661(a) states that the sum of two factors "shall be allowed as a deduction...." Thus, this deduction, like any other, may be claimed at the option of the taxpayer. The Court, however, can hardly order a taxpayer to claim a deduction for any tax year. The logical effect of First American's argument is to place the Court in the posture of reviewing Dominion's tax return before it has been filed and to order Dominion to claim a deduction which it may, or may not, be allowed. This Court cannot act as a tax consultant and dictate to Dominion the terms of its tax return. Dominion called upon the Court to determine who carried the responsibility for paying the taxes for 1990, not to advise it on what deductions it is allowed to take. Therefore, the Court rejects First American's final argument.

Accordingly, having found that the trusts administered by Dominion have not

terminated, the Court finds that Dominion should pay the federal capital gains taxes and Tennessee taxes for the 1990 tax year, and orders the payment of such taxes from the trust assets.