458 F.2d 431
 72-1 USTC P 9342
 Martin H. MOYER, Plaintiff-Appellant,
v.
Jess MATHAS, Clerk of the Circuit Court of Volusia County,
Florida, Defendants-Appellees.
Martin H. MOYER, Plaintiff-Appellant,
v.
A. J. O'DONNELL, Jr., District Director of Internal Revenue
for the District of Florida and United States of
America, Defendants-Appellees.
 Nos. 71-2587, 71-2588.
 United States Court of Appeals,
Fifth Circuit.
 April 6, 1972.
 
 William R. Frazier, Jacksonville, Fla., for plaintiff-appellant.
 John R. Godbee, Jr., Deland, Fla., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Atty., Tax Div., Dept. of Justice, Washington, D. C., John D. Roberts, Asst. U. S. Atty., Jacksonville, Fla., Gilbert E. Andrews, Richard Farber, Attys., Fred B. Ugast, Acting Asst. Atty. Gen., Crombie J. D. Garrett, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendants-appellees; John L. Briggs, U. S. Atty., of counsel.
 Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.
 GOLDBERG, Circuit Judge:
 
 
 1
 In October of 1949 the United States made assessments of federal income tax, penalties, and interest against Maggie P. Tookes, and filed notices of federal tax lien with the Clerk of the Circuit Court of Volusia County, Florida. The taxpayer, Maggie Tookes, paid only a portion of the assessments, and in October of 1955, almost six years after the assessments were made, the government filed suit against the taxpayer in the United States District Court for the Southern District of New York to reduce the assessments to judgment. While this litigation was pending, the taxpayer in 1958 conveyed various parcels of real estate, owned by her in 1949 and located in Volusia County, Florida, to plaintiff, Martin H. Moyer. The government finally secured a default judgment against the taxpayer in 1962 in the amount of $106,000, which represented the assessed tax liability and interest to the date of judgment. During the several years in which Moyer owned the Volusia County realty obtained from Maggie Tookes, he became delinquent in the payment of the local property taxes. This delinquency was eventually rectified in 1969, when the Clerk of the Circuit Court of Volusia County, Florida, conducted two tax deed sales in connection with Moyer's real property. On July 7, 1969, the Volusia County Clerk, Jess Mathas, sold a portion of the land that the plaintiff had acquired from Maggie Tookes. The base bid for this acreage was fixed at approximately $4,600, and the sale produced a surplus in the amount of $16,400. The day after this sale the federal government caused notices of levy to be issued to Mathas, and the clerk thereupon paid over the surplusage to the government. Then, on December 1, 1969, Jess Mathas held another tax deed sale involving additional portions of land which the plaintiff had procured from Maggie Tookes. The base bid for this realty amounted to some $6,900, and the sale produced an overage of almost $29,000. Again the government sought these monies by serving a notice of levy on the Volusia County Clerk. Several days subsequent to this second tax deed sale, and while Jess Mathas still possessed the $29,000 surplus, Moyer instituted in a federal district court a suit against Mathas and the United States, seeking an injunction requiring the defendant Mathas to pay over the surplus funds to Moyer. Several months later the plaintiff instituted another suit against the United States, seeking recovery of the surplus which the government had received from the first tax deed sale. Pursuant to 26 U.S.C.A. Sec. 7403,[1] the government counterclaimed in both actions, seeking foreclosure of its 1949 tax lien. The district court consolidated the two cases, and on the basis of the above stipulated facts the trial court held that the government was entitled to the surplus funds arising out of the tax deed sales of the Volusia County realty, D.C., 332 F.Supp. 357. On appeal, the plaintiff asserts that the district court erred in two respects. First, Moyer contends that the trial judge erroneously concluded that the 1949 tax lien had not expired, and second, the plaintiff asserts that the lower court incorrectly held that Moyer could not collaterally attack the validity of the 1949 tax assessments made against Maggie Tookes. We affirm the judgment of the district court.
 
 
 2
 The Internal Revenue Code of 1954 provides that if a taxpayer neglects or refuses to pay a tax that has been demanded of him, the amount of the tax becomes a lien in favor of the government upon all of the taxpayer's property. 26 U.S.C.A. Sec. 6321. In the case of income taxes, the lien created by section 6321 arises at the time the tax assessment is made and continues "until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C.A. Sec. 6322. The plaintiff in the instant case contends that the government's 1949 tax lien expired because Maggie Tookes' tax liability became "unenforceable by reason of lapse of time." The only statutory analogue we have found which gives substance to the phrase "lapse of time" is embodied in section 6502(a) of the Code. That section provides:
 
 
 3
 "Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun-
 
 
 4
 (1) within 6 years after the assessment of the tax, or
 
 
 5
 (2) prior to the expiration of any period for collection agreed upon in writing by the Secretary or his delegate and the taxpayer before the expiration of such 6-year period (or, if there is a release of levy under section 6343 after such 6-year period, then before such release).
 
 
 6
 The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. The period provided by this subsection during which a tax may be collected by levy shall not be extended or curtailed by reason of a judgment against the taxpayer."[2]
 
 
 7
 26 U.S.C.A. Sec. 6502(a). In the instant case there is no question that the assessments against Maggie Tookes were timely made under 26 U.S.C.A. Sec. 6501. However, the plaintiff asserts that section 6502(a) barred the government's foreclosure suits in this case because such suits were not brought within six years after the assessment of the tax. To pursue his argument it is necessary that the plaintiff assert that the phrase "proceeding in court" in section 6502(a) refers only to a foreclosure proceeding. However, this court has held that the limitation provisions of section 6502(a) are satisfied if the government institutes, within six years after the assessment of the tax, a suit for an in personam judgment against the taxpayer. See Hector v. United States, 5 Cir. 1958, 255 F.2d 84. Of course, since our decision in Hector, the statutory mold of the tax lien provisions has been recast by congressional action. Each of the adversaries in this case argue with fervor and considerable passion that the Federal Tax Lien Act of 1966, Pub.L. No. 89-719, 80 Stat. 1125, gives him support and solace. We have read the Act and scrutinized its legislative history. And having followed every stitch in its Mother Hubbard hem, we unraveled no thread that binds either litigant's theory. While we are neither endowed with necromantic talents nor are we soothsayers of many congressional minds, we are nonetheless convinced that the 1966 Act left unaltered the six-year limitation provision of section 6502(a). Since the government in this case instituted a personal judgment action, or, in statutory terminology, "a proceeding in court," against the taxpayer within six years of the assessment of the tax, we conclude that the district court was correct in holding that the provisions of section 6502(a) were satisfied and that the government was not prohibited by that section from enforcing its 1949 lien.[3]
 
 
 8
 We next turn our attention to the plaintiff's second contention, that he should be permitted to attack the validity of the tax assessments made against the taxpayer, Maggie Tookes. Without discussing the general inability of a non-taxpayer to attack the merits of tax assessments made against a taxpayer,[4] we think that Moyer is foreclosed from asserting the underlying invalidity of the assessments against Maggie Tookes by the principles of res judicata. It is clear that the 1962 judgment procured by the government against the taxpayer was an adjudication of the validity of Maggie Tookes' tax liability. That 1962 judgment is no less res judicata because it was obtained by default, absent any proof of fraud, collusion, or lack of jurisdiction. Morris v. Jones, 1946, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488. And plaintiff, as transferee of the Volusia County realty, is in privity with the taxpayer. See generally 10 J. Mertens, Law of Federal Income Taxation Sec. 60.24. We conclude that under general principles of res judicata the existence of these elements operates to bar the plaintiff from relitigating the validity of the tax assessments made against the taxpayer.
 
 
 9
 While tax results often seem harsh, the schematics of our income tax law and the attendant regulations require as much finality as is consonant with fairness and justice. The magnitude of our tax exactions, the multifariousness of the structure's configurations, and its almost universal impact demand rigidity, lest the system breed litigation with concomitant, incessant, and ceaseless babble. Once the tax has been assessed and liens attach, much as we would like to relax these stentorian and perduring concepts in the name of equity, the entire tax tower would topple unless we apply with little remorse the rules of limitations, time fixation, res judicata, and similar jurisprudential tools having terminality as their goal. Of course, we must be certain that a third party does not become prey to the traps and tricks in the tax collector's bag. But at the same time we must assure the tax gatherer that his gatherings be both speedy and unevadable, with a just and honorable finis for the tax and the taxer. We conclude that such an assurance in this case can be achieved only by the affirmance of the district court's judgment.
 
 
 10
 Affirmed.
 
 
 
 [1]
 26 U.S.C.A. Sec. 7403(a) provides:
 "In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary or his delegate, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability."
 
 
 [2]
 The last sentence of this section rendered the government's notices of levy upon the defendant Mathas in this case invalid, and indeed the government conceded the untimeliness of its administrative action. Since the government was prohibited by statute from proceeding by non-judicial foreclosure it was necessary to file counterclaims against the plaintiff in order to foreclose on its 1949 lien
 
 
 [3]
 Of course, our upholding the validity of the tax lien in and of itself does not grant to the government a perpetual preference vis-a-vis the rights of bona fide purchasers of a taxpayer's property. In addition to showing that it has a valid lien, the government must also demonstrate that it has protected its lien's statutory priority. In this case there can be no question that the government timely refiled its 1949 tax lien in order to retain its priority vis-a-vis the rights of Moyer. The Federal Tax Lien Act of 1966 requires the government, as a general rule, to refile notices of its tax liens within the one-year period ending thirty days after the expiration of the six-year period beginning with the date of the assessment of the tax. See 26 U.S.C.A. Sec. 6323(g). However, with respect to those liens in existence on the date the Act became effective, section 6323(g) (4) provides that such liens were to be refiled during the calendar year 1967. In the instant case the government complied with this transitional rule, for it refiled its 1949 tax lien on December 27, 1967
 
 
 [4]
 See, e. g., 26 U.S.C.A. Sec. 7426(c); Falik v. United States, 2 Cir. 1965, 343 F.2d 38; Graham v. United States, 9 Cir. 1957, 243 F.2d 919; United States v. Pearson, S.D.N.Y.1966, 258 F.Supp. 686; Cooper Agency, Inc. v. McLeod, E.D.S.C 1964, 235 F.Supp. 276, aff'd per curiam, 4 Cir. 1965, 348 F.2d 919; Quinn v. Hook, E.D.Pa.1964, 231 F.Supp. 718, aff'd per curiam, 3 Cir. 1965, 341 F.2d 920; Commercial Credit Corp. v. Schwartz, E.D.Ark.1954, 126 F.Supp. 728