**UNITED STATES of America,**
**Plaintiff,**

v.

**Harry MARTIN, a/k/a St. Julian Harrison, a/k/a Harry Walters, a/k/a Harry Harrison, et al., Defendants.**

**No. 74 Civ. 3166 (MP).**

United States District Court,
S. D. New York.

June 19, 1975.

Paul J. Curran, U. S. Atty. for the Southern District of New York by Frederick P. Schaffer, Asst. U. S. Atty., for the United States.

Louis Bender, New York City, for defendant Harry Martin.

Adrian P. Burke, Corp. Counsel, City of New York by Milton Bader, New York City, for defendants.

### OPINION

POLLACK, District Judge.

Plaintiff, the United States of America, moves pursuant to Fed.R.Civ.P. 56 for summary judgment of foreclosure of liens and sale of the real property of defendant, Harry Martin. The liens derive from income tax jeopardy assessments issued on April 17, 1961 relating to the tax years 1958 and 1959. A money judgment against Martin based on the same jeopardy assessments was

heretofore obtained by default, on August 12, 1971. *United States v. Martin,* S.D.N.Y.Dkt. # 69 Civ. 5722.

Martin opposes summary judgment against him contending that he has valid defenses to the jeopardy assessments, consisting of lack of the notice of deficiency required by statute and use of information elicited in violation of his Fourth and Fifth Amendment rights. In addition, Martin cross-moves pursuant to Rule 60(b) for relief from the August 12, 1971 default money judgment. Martin asserts that the default was taken by the government contrary to an oral agreement by an Assistant United States Attorney not to do so without prior notice as well as having been taken in contravention of the notice requirements of Rules 55(b) and 77(d), Fed.R.Civ.P.

For the reasons indicated below, Martin's Rule 60(b) cross-motion must be denied and summary judgment in favor of the government must be granted. The facts follow.

On April 17, 1961, the Internal Revenue Service ("IRS" hereafter) issued jeopardy assessments against Harry Martin for income tax deficiencies relating to the tax years 1958 and 1959 in the amount of $138,601.27. Notice and demand for payment were made on the same day. Martin, also known as St. Julian Harrison, then a parolee of the State of New York, had been questioned by New York City Police on February 8, 1960, and a search of the candy store which he operated revealed a number of policy slips and other gambling materials. Martin was arrested, charged with various violations, including policy, and tried. The trial resulted in an acquittal. The New York City Police then turned over to the IRS the defendant's statements, which had been stenographically recorded, together with the gambling materials seized from his candy store. Martin was thereafter committed to Dannemora State Prison for violation of parole imposed upon an earlier and unrelated offense.

In March 1961 Martin was interviewed at Dannemora State Prison by a Special Agent of the Intelligence Division of the IRS. Without counsel, and without being advised of his constitutional rights (according to his pleading in this case), Martin responded to questions about his income, assets, expenditures and income tax returns for 1958 and 1959, as well as other years.

Allegedly based upon the information so obtained, the IRS issued the jeopardy assessments mentioned above which included fifty percent fraud penalties and interest for a total claim of $138,601.27. Federal tax liens in that amount were then filed against Martin on April 27, 1961 and June 5, 1961 with the Register of New York County and were refiled on May 5, 1969.

In 1965 the defendant was indicted criminally on two counts of income tax evasion for understating his 1958 and 1959 income. The understatement charged was substantially lower than the amount of the jeopardy assessment previously stated. This indictment was nolle prosequed after Judge Tyler on February 2, 1967 suppressed all of the defendant's statements to the New York City Police Department and to the Special Agent of the Intelligence Division of the IRS as well as the gambling materials turned over by The New York City Police Department to the IRS. *United States v. Harrison,* 265 F.Supp. 660 (S.D.N.Y.1967).

On March 20, 1967 Martin executed an extension of the statute of limitations for the collection of the tax deficiencies on his 1958 and 1959 returns to December 31, 1969. One day before expiration of the extended period, on December 30, 1969, the government brought suit in this Court for a money judgment against Martin on the income tax obligations outstanding under the jeopardy assessments. Martin was

served with a copy of the summons and complaint on February 10, 1971 at Dannemora State Prison where he was then confined. Upon his default in answering the complaint, judgment by default for the amount of the assessment with interest, $192,732.19, was entered by the Clerk of the Court on August 12, 1971 in favor of the government. Martin was notified of this judgment by letter dated November 10, 1971 sent to his last home address, and prompt payment was demanded therein. He informed his attorney of this default judgment some time in or about early 1972.

Martin claims here that the taking of the default judgment violated an understanding with government counsel that no default would be entered and that judgment would not be taken without prior notice, and that the violation deprived Martin of the right to interpose meritorious defenses to the complaint. By letter of June 22, 1972 to government counsel, Martin's lawyer outlined the Fourth and Fifth Amendment violations claimed by Martin to require that the jeopardy assessments and the attendant liens be set aside. The same letter stated that while Martin and his counsel believed that the defenses would prevail, Martin wanted to dispose of the matter and was willing to deed to the government one of his houses, at 467 West 165th Street, which he said he owned free and clear except for the government's lien, in full settlement of the tax claims asserted for the years 1958 and 1959.

The Department of Justice rejected that offer of settlement and so advised the United States Attorney's Office in September 1972. Martin's attorney, however, states that he never received notice that the settlement offer had been rejected. Matters remained in this pos-

ture until the present foreclosure suit was filed on July 24, 1974.[1]

In the present action, the government asserts that it seeks to foreclose the federal tax lien against any and all property and rights to property belonging to Martin. The complaint further states that the action has been authorized by a delegate of the Secretary of the Treasury and that the Court's jurisdiction is based on 26 U.S.C. § 7403(a) which authorizes an action to enforce a lien or to subject property to the payment of a tax through a civil action to be filed in a District Court.

In addition to Martin, who is presently located at the Bronx House of Detention, the defendants in the present action are Fehrmans Simmons, a mortgagee of 472 West 144th Street, New York City; 467 West 165th Street Corp., a mortgagee of the premises at that address; and The City of New York, Department of Tax and Finance, a lien holder against defendant Harry Martin for real estate tax arrears. Notice of pendency of this action was filed on July 24, 1974 reciting that the suit is for "the foreclosure of a federal tax lien". The defendants Simmons and 467 West 165th Street Corp. have defaulted in answering the complaint. The Answer of The City of New York to the complaint contends that its liens for real estate taxes and assessments have priority over the federal tax lien pursuant to Section 6323(b)(6) of the Internal Revenue Code of 1954 and Section 415(1)–7.0 of the Administrative Code of the City of New York. The plaintiff concedes that the City is entitled to such priority, and subject to proof by the City of the existence and extent of its real estate tax liens, plaintiff has agreed that any sale herein should be made subject or subordinate to such liens.

1. By letter of February 18, 1975, Martin's attorney made another offer of settlement. That offer was also rejected by the Department of Justice, and Martin's attorney was so advised by letter of April 14, 1975.

The summons and complaint herein were served on Martin on July 26, 1974. He interposed an answer thereto on November 4, 1974 setting up in affirmative defense the alleged invalidity of the jeopardy assessments in 1961 and of the default judgment in 1971.

The government's burden on the summary judgment motion is to establish that there are no material facts genuinely in issue and that it is entitled to judgment in its favor as a matter of law. Laying to one side for a moment the effect to be given to the default judgment, two of the affirmative defenses raised by Martin in the present action would present genuine issues of material fact. Citing *Pizzarello v. United States*, 408 F.2d 579 (2d Cir.), *cert. denied* 396 U.S. 986, 90 S.Ct. 481, 24 L. Ed.2d 450 (1969), Martin argues that the underlying jeopardy assessments are invalid because they were based entirely or substantially on the statements and documents which Judge Tyler ordered suppressed in the criminal prosecution as having been obtained in violation of Martin's constitutional rights. Whether or not this information was used by the government in preparing the jeopardy assessments would be a material issue of fact.

Martin also contends that contrary to the requirements of 26 U.S.C. § 6861(b) the Internal Revenue Service failed to mail a notice of deficiency [2] to him at Dannemora State Prison, which he claims was his "last known address" [3], within 60 days of making the jeopardy assessments.

■ The general rule appears to be that the failure to properly issue a notice of deficiency renders the jeopardy assessment invalid, notwithstanding the fact that the taxpayer would have been informed of the existence of the jeopardy assessment by the notice and demand for payment of the tax and that he may seek to enjoin the IRS under 26 U.S.C. § 6213(a) from proceeding with the collection of the tax until the notice of the deficiency is issued. *E. g., United States v. Ball*, 326 F.2d 898 (4th Cir. 1964); 9 Mertens, *Law of Federal Income Taxation*, § 49.146 (1971). *Contra Cohen v. United States*, 297 F.2d 760 (9th Cir.), *cert. denied* 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962). Thus whether or not a proper notice of deficiency had been issued would also raise a material issue of fact.

■ Furthermore, as a general rule, a taxpayer is permitted to challenge the validity of the underlying assessment in the government's suit to foreclose the liens based upon the assessment. *E. g., United States v. Lease*, 346 F.2d 696 (2d Cir. 1965); *United States v. Mauro*, 243 F.Supp. 413 (S.D.N.Y.1965).

However, none of these issues are any longer open to be raised by defendant Martin; they have all been laid to rest by the money judgment entered in the government's favor on August 12, 1971. That judgment invokes the principle of res judicata as a prior judicial determination of the validity of the assessment. *See, e. g., Moyer v. Mathas*, 458 F.2d 431, 434 (5th Cir. 1972); *Graham v. United States*, 243 F.2d 919, 922 (9th Cir. 1957); *United States v. Howard*, 296 F.Supp. 264 (D.Or.1968); *United States v. Mauro*, 243 F.Supp. 413 (S.D. N.Y.1965) (dictum).

2. The § 6212 notice of deficiency is to be distinguished from the § 6303 notice and demand for payment of the tax due. The primary function of the notice of deficiency is as the taxpayer's "ticket" to the Tax Court, where he may litigate his claim without prepayment of the tax.

3. While in certain circumstances, the IRS need not mail the notice of deficiency to the prison address of an incarcerated taxpayer, even if the IRS knows that he is incarcerated, *e. g., Cohen v. United States*, 297 F.2d 760 (9th Cir.), *cert. denied* 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962), this Court cannot say as a matter of law that that would have been proper on the basis of the present record.

■ The rule of res judicata is a stringent one. The judgment on the cause of action involved is conclusive not only as to any matters which may have been offered to defeat the claim, but also as to any matters which could have been offered to defeat the claim, but which were not. *E. g., Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). Moreover, the rule of res judicata is rendered no less inexorable by the fact that the judgment may have been taken by default, *e. g., Moyer v. Mathas*, 458 F.2d 431, 434 (5th Cir. 1972); 1B Moore's Federal Practice, ¶ 0.409[4], or that constitutional claims are involved.[4] *See generally Thistlethwaite v. City of New York*, 497 F.2d 339 (2d Cir.), *cert. denied* 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed. 686 (1974).

■ Martin contends that since the government is not suing on the judgment *per se* in the present action, but rather seeks to foreclose the tax liens, the doctrine of res judicata is inapplicable. The apparent implication is that the present suit does not involve the same cause of action as the prior suit and that the applicable doctrine is therefore not res judicata, but rather the more limited doctrine of collateral estoppel which generally gives no preclusive effect to a default judgment since nothing was actually litigated. *See* 1B Moore's Federal Practice, ¶0.444[2] at 4006.

Resolution of the present controversy is not likely to be advanced, however, by contrasting the labels of res judicata and collateral estoppel or the same and different causes of action.[5] Fairly stated, the essential question becomes whether the claims asserted by the government in the present and prior actions are closely enough related to justify the conclusion that the defendant should have foreseen the consequences in the present action of his failure to litigate his defenses in the prior action. *See* 1B Moore's Federal Practice, ¶0.444[2] at 4005.

■■ The answer is inescapably yes. In both suits, the central issue for both Martin and the government is necessarily the validity of the jeopardy assessments. The financial stake for Martin in the first suit was sufficiently great so that a default should not have been lightly incurred. The government's decision to foreclose the liens rather than to execute the money judgment stems not from any fundamental difference that each action provides the government vis-a-vis Martin, but rather from the different nature of the rights that each action provides the government vis-a-vis Martin's creditors in light of the particular facts of this case. *See generally* S.Rep. No. 1708, 1966 U.S. Code Cong. & Admin.News pp. 3753–54. Nor should the present suit to foreclose the liens have come as any surprise to Martin. The liens were initially filed in 1961 and refiled in 1969. The liens were not merged in the 1971 default judgment, but remained valid and subsisting as long as the judgment was unpaid and the time for collection had not expired. *See, e. g., United States v. Hodes*, 355 F.2d 746 (2d Cir. 1966), *cert. dismissed* 386 U.S. 901, 87 S.Ct. 784, 17 L.Ed.2d 779 (1967); S.Rep. 1708, *supra*.[6]

---

4. The analogies proffered by defendant to habeas corpus and coram nobis are not persuasive.

5. "Income taxes are levied on an annual basis. Each year is the origin of a new liability and of a separate cause of action. Thus if a claim of liability or nonliability relating to a particular tax year is litigated, a judgment on the merits is *res judicata* as to any subsequent proceeding involving the same claim and the same tax year. But if the later proceeding is concerned with a similar or unlike claim relating to a different tax year, the prior judgment acts as a collateral estoppel only as to those matters in the second proceeding which were actually presented and determined in the first suit." *Commissioner v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948).

6. The Committee Report makes the following comments on the effect of the Federal Tax Lien Act of 1966:

Your committee believes the entry of a judgment confirming an assessed tax lia-

The Court accordingly concludes that Martin's tax liability was conclusively determined by the 1971 default judgment and that summary judgment must be granted in the government's favor unless grounds exist on which the default judgment should be reopened.

As indicated previously, Martin's Rule 60(b) motion for relief from the 1971 default money judgment is based upon the government's supposed breach of an alleged oral agreement granting Martin an indefinite time to answer the complaint with the understanding that no default would be taken without prior notice to his attorney. Martin contends that he "appeared" in the present action by virtue of that oral agreement and that he was therefore entitled to notice of the application for the default judgment in accordance with Rule 55(b) and to notice of the entry of judgment in accordance with Rule 77(d). Since such notices did not issue, he contends that the default judgment may be set aside under Rule 60(b)(4)

on the ground that it is void or under Rule 60(b)(6) on the ground that the circumstances justify it.[7] It is to avoid just such controversies that written stipulations to be so ordered by the Court are required to validate extensions of time.[8] *See generally* 4 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1165, at 627–28 (1969).

It is indisputable that in the 1969 suit for a money judgment this Court validly obtained personal jurisdiction over the defendant and subject matter jurisdiction over the dispute. Thus even assuming *arguendo* both that there was an oral agreement not to take a default judgment without prior notice and that the agreement constituted an appearance by Martin for the purposes of Rules 55(b) and 77(d),[9] the resulting failure to give notice of the application for and the entry of the default judgment is a procedural rather than a jurisdictional defect which does not necessarily render the judgment void. The Court must consider the significance of

---

bility should not cut back on the rights of the Government. Both the judgment and the lien arise out of the same tax liability, and it is intended that this liability continue until it is satisfied or becomes unenforceable by the lapse of time. Since the liability giving rise to the lien and that giving rise to the judgment is [sic] the same, your committee believes the Government's priority, vis-a-vis other creditors, should be the same under each. Moreover, since, in effect, the judgment merely confirms the validity of the lien arising out of the tax assessment, if is believed that the Government's right to foreclosure under the tax lien (as contrasted to the more cumbersome method of foreclosing under the judgment) should not be curtailed as the result of reducing the assessment to judgment. . . . For the reasons indicated above, your committee's bill amends existing law to provide that a tax lien is not merged into a judgment on the assessed tax liability. Under the bill, where a tax assessment is reduced to judgment, the lien continues until the underlying tax liability is satisfied or becomes unenforceable by reason of lapse of time.

7. To the extent that Martin's cross-motion is based upon surprise or the alleged miscon-

duct of the government, the motion is now time barred since the "reasonable time" provision of Rule 60(b)(6) may not be used to extend the one year limitations period applicable to Rules 60(b)(1) and 60(b)(3). *E. g., Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 701–702 (2d Cir.), *cert. denied* 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139, *reh. denied* 409 U.S. 1029, 93 S.Ct. 470, 34 L.Ed.2d 324 (1972); *Rinieri v. News Syndicate Co.*, 385 F.2d 818 (2d Cir. 1967).

8. Civil Rule 15 of the Rules of this Court provides that in the absence of a federal rule or statute directly or by analogy governing a procedural question, the Court in its discretion may apply the New York State Rule. New York C.P.L.R. § 2014 provides that:

An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.

9. *Compare Hutton v. Fisher*, 359 F.2d 913 (3d Cir. 1966) *with Port-Wide Container Co. v. Interstate Maintenance Corp.*, 440 F. 2d 1195 (3d Cir. 1971).

the lack of notice in light of all the circumstances. *See, e. g., United States v. Borchers*, 163 F.2d 347 (2d Cir.), *cert. denied* 332 U.S. 811, 68 S.Ct. 108, 92 L. Ed. 389 (1947); *Winfield Associates, Inc. v. Stonecipher*, 429 F.2d 1087 (10th Cir. 1970); *United States v. Manos*, 56 F.R.D. 655 (S.D.Ohio 1972); *Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963); 7 Moore's Federal Practice, § 60.25[2] at 311. *Contra Press v. Forest Laboratories, Inc.*, 45 F.R.D. 354 (S.D.N.Y.1968). While Martin may thus not attack the default judgment as void within the meaning of Rule 60(b)(4),[10] he may proceed under the more general language of Rule 60(b)(6)—"any other reason justifying relief from the operation of the judgment".

In the present case, the government's November 1971 letter informing Martin of the default judgment was received no later than early 1972. Thus the defendant had ample opportunity to bring a Rule 60(b)(1) or a Rule 60(b)(3) motion by August 1972, when the one year period expired, or to bring a Rule 60(b)(6) motion within a reasonable time. Had such a motion been brought and granted at that time, any defect in notice would have been essentially harmless. Martin did not bring a Rule 60(b) motion until three years after receiving actual notice that the default judgment had been entered.

In considering Rule 60(b) motions, the Courts have been unyielding in requiring that a party show good reason for his failure to take appropriate action sooner. 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2857, 160–61 (1973). Martin contends that his failure to bring such a motion previously was either excusable or reasonable in light of the settlement negotia-

tions with the United States Attorney's Office which culminated in the June 24, 1972 letter containing Martin's settlement offer. However, even assuming that notice of the rejection of the offer by the Department of Justice in September 1972 was never received by Martin's attorney, there was no follow-up on the status of the settlement offer for two years. Even after this suit was filed in July 1974, no motion was made under Rule 60(b) until an additional eight months had elapsed.

The government contends that it has been prejudiced by Martin's delay since if the default judgment were now to be vacated the government would have "the difficult task of reconstructing the evidence on which it based tax assessments against the defendant for the years 1958 and 1959."

In light of all the circumstances and balancing the conveniences in this case, the Court concludes that the August 12, 1971 default judgment is not void and that the defendant failed to seek relief from that judgment within a reasonable time as required by Rule 60(b).

An apposite expression of the reason why the belated objections of defendant Martin cannot be recognized here is that:

"[w]hile tax results often seem harsh, the schematics of our income tax law and the attendant regulations require as much finality as is consistent with fairness and justice. The magnitude of our tax exactions, the multifariousness of the structure's configurations, and its almost universal impact demand rigidity, lest the system breed litigation with concomitant, incessant, and ceaseless babble. Once the tax has been assessed and liens attach, much as we would like to relax these

---

10. Martin contends that the government's failure to send the notice of deficiency discussed above also renders the judgment void under Rule 60(b)(4). While the Fourth Circuit did refer to such a defect as "jurisdictional" in reversing summary judgment for the government where the defendant had not raised the point below, *United States v. Ball, supra*, failure to provide a notice of deficiency is plainly not jurisdictional within the meaning of Rule 60(b)(4) and the general rules for collateral attack on judgments.

stentorian and perduring concepts in the name of equity, the entire tax tower would topple unless we apply with little remorse the rules of limitations, time fixation, res judicata, and similar jurisprudential tools having terminality as their goal." *Moyer v. Mathas*, 458 F.2d 431, 434–35 (5th Cir. 1972).

Summary judgment is granted in favor of the government, and the defendant's Rule 60(b) cross-motion is denied. Settle order on notice returnable on or before June 27, 1975.

So ordered.