611 F.2d 703
 Bankr. L. Rep. P 67,286
In the Matter of Ellis Victor Kapp, Bankrupt.
Ellis Victor KAPP, Appellee,
v.
NATURELLE, INC., Pearlduck, Inc., Hess Hair Milk
Laboratories, Inc., The Stephen Company, Zena Clark Co.,
Amerace Corp., Master Appliance, Walter Sporn Co., Kee
Industries, Barbara D. Stevens Co., Select Beauty Brands,
Yale Mfg. Co., and The Nestle Le Mur Co., corporations, Appellants.
 No. 79-1163.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 13, 1979.
Decided Dec. 19, 1979.
 
 William J. Pfeiffer, Aberdeen, S.D., for appellants; Joseph G. Rimlinger, Aberdeen, S.D., on brief.
 J. Bruce Blake, Sioux Falls, S.D., on brief for appellee.
 Before STEPHENSON and McMILLIAN, Circuit Judges, and HANSON, Senior District Judge.*
 STEPHENSON, Circuit Judge.
 
 
 1
 Plaintiff-bankrupt Ellis Victor Kapp brought this action to have the claims of thirteen judgment creditors, defendants-appellants herein, disallowed in his personal bankruptcy. The bankruptcy judge ruled that the debts in question were corporate debts and not those of Kapp individually and disallowed the claims. On appeal the district court affirmed the bankruptcy court. The creditors now appeal, contending for reversal that Kapp lacked standing to prosecute this action, that relitigation of the issue of Kapp's personal liability for the debts was barred by res judicata and laches, and that, in any event, the evidence was insufficient to support the court's contention that Kapp was not personally liable. We reverse and remand.
 
 
 2
 From 1952 to 1965 Kapp owned and operated a barber and beauty supply company in Aberdeen, South Dakota, as a sole proprietorship. In 1965 the business was incorporated under the name of Aberdeen Barber Supply Company. However, the company order blanks and invoices continued as before to bear the name of Aberdeen Barber Supply.[1] Kapp became president and one of the three directors of the new corporation.[2]
 
 
 3
 In the early 1970's the company suffered financial reverses and fell behind in the payment of its obligations. In 1973, 1974 and 1975, thirty-four manufacturers and distributors of barber and beauty products to the company, all represented by the same attorney, obtained default judgments against the company in state court. The last thirteen of these obtained default judgments against Kapp individually as well as against the company.
 
 
 4
 In 1977 both the company and Kapp filed for bankruptcy. The claims of the thirty-four judgment creditors were allowed in the corporate bankruptcy. The corporate assets were, however, insufficient to satisfy the judgments. Therefore, the thirteen creditors who had obtained judgments against Kapp individually filed proof of their claims in the Kapp bankruptcy. Kapp thus brought this action to disallow these claims, asserting that the debts were corporate debts for which he had incurred no personal liability. At a hearing on the matter before the bankruptcy judge, Kapp admitted with respect to the thirteen judgments in question that he was served with process both as an individual and on behalf of the corporation and that he received notice that default judgments were entered against him personally as well as against the corporation. He further admitted that he made no attempt in state court to have the judgments set aside.
 
 
 5
 The bankruptcy judge made an independent examination of the evidence and concluded that the creditors never had any transactions with Kapp individually, that they had no claims or causes of action against Kapp, and that the state court judgments were rendered on claims against the corporation only. Evidence cited in support of these conclusions included the Articles of Incorporation of Aberdeen Barber Supply Company and a Certificate of Incorporation issued by the Secretary of State of South Dakota, the fact that all purchase orders, invoices, and confirmations of orders were in the name of Aberdeen Barber Supply and none in Kapp's name, and the fact that prior to the thirteen judgments in question, twenty-one similar judgments were taken by the same attorney against the corporation only. Accordingly, the bankruptcy judge held that equity required that the claims be disallowed in the Kapp bankruptcy and ordered that the state court judgments be discharged and satisfied of record.
 
 
 6
 On appeal for review of this order, the district court held that the findings of the bankruptcy judge were not clearly erroneous and affirmed. The thirteen judgment creditors timely appealed that decision to this court. Our jurisdiction is predicated on section 24a of the Bankruptcy Act, 11 U.S.C. § 47(a) (1976).[3]
 
 
 7
 Standing.
 
 
 8
 The creditors' first argument on appeal is that Kapp, as bankrupt, did not have standing to object to the allowance of the claims in question. Section 57(d) of the Bankruptcy Act, 11 U.S.C. § 93(d), and Bankruptcy Rule 306(b) provide that claims may be objected to by "parties in interest." The term "party in interest" is not defined in the Act. Courts construing the provision have reasoned that the interest must be a pecuniary interest in the estate to be distributed. Thus, since the bankrupt is normally insolvent, he is considered to have no interest in how his assets are distributed among his creditors and is held not to be a party in interest. In re Woodmar Realty Co., 241 F.2d 768 (7th Cir. 1957); In re Pramer, 131 F.2d 733 (7th Cir. 1942); Gregg Grain Co. v. Walker Grain Co., 285 F. 156 (5th Cir. 1922), Cert. denied, 262 U.S. 746, 43 S.Ct. 522, 67 L.Ed. 1212 (1923). However, when it appears that, if the contested claims are disallowed, there may be a surplus of assets to be returned to the bankrupt, the bankrupt is considered to have standing to contest the claims.[4] In re Community Neighbors, Inc., 287 F.2d 542 (7th Cir. 1961); In re Woodmar Realty Co., supra. See generally 3 Collier on Bankruptcy P 57.17(2.1) (14th ed. 1977); Annot., 64 A.L.R.2d 889 (1959). Cf., In re J. M. Wells, Inc., 575 F.2d 329 (1st Cir. 1978); Hartman Corporation of America v. United States, 304 F.2d 429 (8th Cir. 1962) (the bankrupt is not a "person aggrieved" within the meaning of 11 U.S.C. § 67(c) and lacks standing to appeal from an order of the bankruptcy court allowing or disallowing claims unless he has demonstrated a pecuniary interest in the outcome).
 
 
 9
 Kapp contends that if all disputed claims against the bankruptcy estate are disallowed, there will be a surplus, and, therefore, he is a party in interest with standing to object to the allowance of the claims. Documents filed with Kapp's petition for bankruptcy set forth his assets and liabilities and substantiate this contention. Moreover, at oral argument appellants' attorney conceded as much. We are thus satisfied that disallowance of all disputed claims would leave a surplus in the bankruptcy estate and that, therefore, Kapp has sufficient pecuniary interest to maintain this action.
 
 
 10
 Res Judicata.
 
 
 11
 The creditors' primary argument for reversal is that the thirteen pre-bankruptcy default judgments were res judicata and precluded the bankruptcy court's reconsideration of the question of Kapp's personal liability for the debts.
 
 
 12
 The law of res judicata, or "claim preclusion,"[5] is well established; "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Accord, Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); Roach v. Teamsters Local Union No. 688, 595 F.2d 446, 449 (8th Cir. 1979). "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. Chicot County Dist. v. Bank, 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940)." Brown v. Felsen, supra, 99 S.Ct. at 2209. If entered by a court having jurisdiction of the parties and subject matter, and absent fraud or collusion, even a default judgment operates as res judicata and is conclusive of whatever is essential to support the judgment. Morris v. Jones, 329 U.S. 545, 550-51, 67 S.Ct. 451, 91 L.Ed. 488 (1946); Riehle v. Margolies, 279 U.S. 218, 225, 49 S.Ct. 310, 73 L.Ed. 669 (1929); Brown v. Kenron Aluminum and Glass Corp., 477 F.2d 526, 531 (8th Cir. 1973); Moyer v. Mathas, 458 F.2d 431, 434 (5th Cir. 1972); Somportex, Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 442 (3d Cir. 1971), Cert. denied, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972); Woods v. Cannaday, 81 U.S.App.D.C. 281, 158 F.2d 184, 185 (D.C.Cir.1946); 1B Moore's Federal Practice P 0.409(4) (1974).
 
 
 13
 Section 63a of the Bankruptcy Act, 11 U.S.C. § 103(a), provides in relevant part that debts of the bankrupt which are based upon a judgment may be proved and allowed against his estate. As a general rule, in allowing and disallowing claims of creditors, bankruptcy courts are required to give res judicata effect to prior judgments of non-bankruptcy courts. Heiser v. Woodruff, 327 U.S. 726, 733, 737, 66 S.Ct. 853, 90 L.Ed. 970 (1946). Thus matters previously adjudicated between the same parties by a court of competent jurisdiction may not be relitigated in the bankruptcy court. It is, however, well established that bankruptcy courts are courts of equity with broad powers to disallow or subordinate claims when equitable considerations warrant. Heiser v. Woodruff, supra. See, e. g., Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); In re Wyse, 340 F.2d 719 (6th Cir. 1965); Margolis v. Nazareth Fair Grounds & Farmers Market, Inc., 249 F.2d 221 (2d Cir. 1957). See generally In re Mobile Steel Co., 563 F.2d 692, 698-702 (5th Cir. 1977); Gleick, The Equitable Power of Bankruptcy Courts to Subordinate Claims or to Disallow Claims Entirely on Equitable Grounds, 25 J. Nat'l A.Ref.Bankr. 99 (1951). Hence, a claim which has been reduced to judgment may nevertheless be challenged in the bankruptcy court on the ground that the rendering court lacked jurisdiction, or because the judgment was procured by fraud or collusion. Heiser v. Woodruff, supra, 327 U.S. at 736, 66 S.Ct. 853; Pepper v. Litton, supra. See generally 1B Moore's Federal, Practice P 0.419(3-6) at 3121-36 (1974).
 
 
 14
 In his complaint Kapp contended disallowance was required because the debts were corporate debts for which he was not personally liable. The bankruptcy judge reasoned that since the judgments were taken by default, the issue of Kapp's personal liability was never raised or litigated in the state court and proceeded to decide the question in Kapp's favor. Based on the principles outlined above, we conclude that the bankruptcy judge erred in failing to accord res judicata effect to the state court judgments and in disallowing the claims.[6]
 
 
 15
 Kapp admits personal service and does not dispute the jurisdiction of the state court. Entered by a court of competent jurisdiction, the judgments finally and conclusively established the validity and amount of the claims against Kapp, notwithstanding that they were obtained by default. See Morris v. Jones, supra, 329 U.S. at 551, 67 S.Ct. 451; Riehle v. Margolies, supra, 279 U.S. at 225, 49 S.Ct. 310; Moyer v. Mathas, supra, 458 F.2d at 434; United States v. Martin, 395 F.Supp. 954, 958 (S.D.N.Y.1975). The defense that he was not personally liable for the debts was clearly available to Kapp at the time of the state proceedings. Although he had every opportunity to defend against the claims, he elected to permit judgments to be taken against him. Res judicata precludes this belated assertion of defenses to causes of action finally adjudicated in the state court.
 
 
 16
 On appeal Kapp apparently concedes that a prior state court judgment against a debtor is normally conclusive in a subsequent bankruptcy proceeding. However, he now claims that the default judgments were fraudulently obtained and that the claims based on these judgments were properly disallowed under the equitable principles enunciated in Heiser v. Woodruff, supra, And Pepper v. Litton, supra. We cannot agree.
 
 
 17
 We note first that the issue of fraud was neither pleaded nor considered in the bankruptcy court. We have carefully reviewed the complaint but can find no allegations that fraudulent misrepresentations were made by the creditors in their state court pleadings or that the judgments were otherwise procured by fraud. Thus Kapp is proceeding on a new theory on this appeal. Arguments or theories not advanced in the proceedings below are not considered by this court when raised for the first time on appeal. United States v. Frank, 587 F.2d 924, 928 (8th Cir. 1978); Werner v. United States Dept. of Interior, Fish & Wildlife, 581 F.2d 168, 171 (8th Cir. 1978).
 
 
 18
 Moreover, Kapp's argument that the default judgments were fraudulently procured is unpersuasive. Kapp contends that there is no evidence to suggest any creditor had any doubt that it was dealing with a corporate entity. He asserts that the disputed default judgments were taken against him irrespective of whether the various creditors knew they were dealing with a corporation and that such a course of conduct amounted to a fraud on the state court. Kapp also contends, based on estoppel principles, that it is impossible for a creditor to obtain judgment against a corporation on a business debt and, in the same action, to deny corporate existence and obtain judgment against an individual on the same debt.
 
 
 19
 While normally a corporation is considered to be a separate and distinct legal entity, it is well established that under some circumstances individuals may be held personally liable for corporate obligations. Thus, when a business is incorporated after having been conducted for a period of time as a partnership or sole proprietorship, the partners or proprietor may remain personally liable to creditors who deal with them as before without actual or constructive notice of the incorporation. See generally 8 Fletcher Cyc. Corp. §§ 4019, 4020 (Perm.Ed.1966). And, in a variety of circumstances, "when retention of the corporate fiction would produce injustice and inequitable consequences," the corporate entity may be disregarded or "pierced" and the corporation and its stockholders treated identically. Mobridge Community Industries, Inc. v. Toure, Ltd., 273 N.W.2d 128 (S.D.1978). See generally 1 Fletcher Cyc. Corp. §§ 41-41.3 (Perm.Ed.1974). In such cases courts frequently render judgment against both the corporation and the individual(s), jointly and severally. See, e. g., Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc., 519 F.2d 634 (8th Cir. 1975). This is clearly true under South Dakota law. See, e. g., Mobridge Community Industries, Inc. v. Toure, Ltd., supra; Larson v. Western Underwriters, Inc., 77 S.D. 157, 87 N.W.2d 883 (1958).
 
 
 20
 Whether an individual will be held personally liable for corporate debts depends upon the unique facts of the particular case. Mobridge Community Industries, Inc. v. Toure, Ltd., supra at 132. Here, although the attorney for the creditors was aware that the corporation existed in form, he had reason to believe Kapp personally should be liable for the corporate debts. At the hearing in the bankruptcy court, the attorney testified that he began suing Kapp as well as the corporation after he discovered that the creditors were not aware that the business was incorporated. In support of this testimony, there was evidence that after incorporation the company continued to operate under a name which failed to reflect its corporate status. Kapp testified at the hearing that he "couldn't answer" whether creditors were ever informed of the incorporation. There was also evidence that corporate formalities were not observed. Further, we were advised by appellants' counsel at oral argument that business property, specifically the office building, was never transferred to the corporation but remained in Kapp's name.[7]
 
 
 21
 We do not decide whether these circumstances were sufficient under South Dakota law to have permitted personal judgments against Kapp on the business debts. Had Kapp contested the claims and fully presented his defenses in the state court, he may or may not have succeeded in preventing the judgments against him. We simply observe that under some circumstances South Dakota courts have held individual shareholders and directors jointly and severally liable with the corporation on corporate obligations. See Mobridge Community Industries, Inc. v. Toure, Ltd., supra; Larson v. Western Underwriters, Inc., supra. Counsel for the creditors had reason to believe Kapp should be liable for the corporate debts. Prudently, he sued both Kapp and the corporation. Kapp had full notice and every opportunity to defend but elected not to do so. Under these circumstances, the action of the creditors in taking default judgments against both Kapp and the corporation can in no way be construed as fraudulent.
 
 
 22
 Kapp has neither adequately pleaded nor adequately proved that the state court default judgments were tainted with fraud. The state court judgments finally adjudicated Kapp's liability to the appellant creditors, and the doctrines of res judicata and full faith and credit required the bankruptcy court to honor those judgments and to allow the claims.[8] The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.[9]
 
 
 
 *
 The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 The company was also commonly known as Aberdeen Barber & Beauty Supply. South Dakota law requires that the name of any corporation, except a nonprofit corporation, contain the word "corporation," "company," "incorporated," or "limited," or an abbreviation of one of these words. S.D.C.L. § 47-2-36 (1967)
 
 
 [2]
 The original Articles of Incorporation indicate that the other two directors were Kapp's wife, from whom he was subsequently divorced in 1971, and Martha Conlon, apparently the company's bookkeeper
 
 
 [3]
 Since this proceeding was commenced prior to October 1, 1979, the provisions of the "old" Bankruptcy Act govern. See Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, § 403, 92 Stat. 2683 (1978). Unless otherwise indicated, all citations are to the old Bankruptcy Act
 
 
 [4]
 Some courts have questioned this rule and have permitted the bankrupt to object to claims despite the insolvency of the estate. American Anthracite & Bituminous Coal Corp. v. Arrivabene, 280 F.2d 119 (2d Cir. 1960); In re Povill, 105 F.2d 157 (2d Cir. 1939). See 3 Collier on Bankruptcy P 57.17(2), (2.1) (14th ed. 1977). Since we find that the present record reveals the possibility of a surplus in the estate, we do not here consider whether the bankrupt may have standing to contest claims under other circumstances
 
 
 [5]
 See generally Engelhardt v. Bell & Howell Co., 327 F.2d 30 (8th Cir. 1964); Vestal, Res Judicata/Claim Preclusion: Judgment for the Claimant, 62 Nw.U.L.Rev. 357 (1967)
 
 
 [6]
 The bankruptcy judge also relied on cases permitting reference to extrinsic evidence to determine the dischargeability of a debt previously reduced to judgment in state court. Resolving a split in the case law, the Supreme Court recently held that "a bankruptcy court may consider evidence extrinsic to the judgment and record of a prior state suit when determining whether a debt previously reduced to judgment is dischargeable under section 17 of the Bankruptcy Act, 11 U.S.C. § 35." Brown v. Felsen, --- U.S. ---, 99 S.Ct. 2205, 2207, 60 L.Ed.2d 767 (1979). Thus Brown holds that in the bankruptcy court a judgment creditor may offer evidence that the debt was the product of fraud or deceit on the part of the bankrupt, even though such issues were not raised in the state court proceedings, for the limited purpose of proving that the debt is not dischargeable. It is clear, however, that the Brown opinion assumes that a prior state court judgment is normally conclusive as to the validity and amount of the creditor's claim against the bankrupt and the opinion does not suggest that the bankrupt may offer extrinsic evidence to collaterally attack the validity of the prior judgment itself
 
 
 [7]
 Kapp's counsel waived argument with the knowledge that appellant intended to appear for argument
 
 
 [8]
 Because we so hold, we do not reach appellants' remaining arguments
 
 
 [9]
 The order of the bankruptcy judge disallowing the claims further ordered that the state court judgments be discharged and satisfied of record. It is not entirely clear what the bankruptcy judge intended by the reference to discharging the judgments. It seems unlikely that this was intended as a determination of the dischargeability of the debts under section 17, 11 U.S.C. § 35. It does not appear to us that dischargeability issues were litigated in this action. Rather, it appears that the order to "discharge" the judgments was wholly predicated on the determination that the claims should be disallowed because they were not Kapp's personal debts. Therefore, we feel the entire order must be reconsidered in light of our holding that the claims were erroneously disallowed. In this decision we express no opinion as to the dischargeability of the debts in question